UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHARINA NADURA and JUAN CARLOS DÁVILA,

                                       Plaintiffs,

-v-

THE CITY OF NEW YORK; NEW YORK CITY POLICE DEPARTMENT ("NYPD") OFFICER ANTHONY PEREZ, SHIELD NO. 13493; and NYPD OFFICER STEVEN WAN, SHIELD NO. 12945, individually and in their official capacities,

                                        Defendants.

---

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**Index No. 17-cv-5285**

**ECF CASE**

---

Plaintiffs, CHARINA NADURA and JUAN CARLOS DÁVILA, by their counsel, GIDEON ORION OLIVER, as and for their Complaint against Defendants, hereby allege as follows:

## PRELIMINARY STATEMENT

1.    Plaintiffs bring this action for compensatory damages, punitive damages, and attorney's fees pursuant to 42 U.S.C. §1983 and 42 U.S.C. § 1988, New York State common law, and the New York State Constitution, for violations of their civil and common law rights, as secured by said statutes and the Constitution of the United States and the Constitution and laws of the State of New York.

2.    On April 14, 2016, Plaintiffs were acting in their capacity as journalists employed by DEMOCRACY NOW!, observing and documenting peaceful activities protected by the First Amendment to the United States Constitution and attendant provisions of the New York State Constitution occurring in the context of a rally against Donald Trump near the Hyatt Hotel on 42nd Street in midtown Manhattan, and NYPD response thereto.

3.     At around 7:30PM, as Plaintiffs were videotaping and recording audio of the protesters and police responses, including arrest activity in their immediate vicinity, without lawful authority or justification, Defendants unlawfully arrested Plaintiffs, preventing them from further observing, documenting, and reporting on police response to the protest in a public place in violation of their rights protected under the first Amendment to the United States Constitution and attendant provisions of the New York State Constitution, and otherwise injured Plaintiffs.

4.     Defendants NYPD OFFICER ANTHONY PEREZ, SHIELD NO. 13493; NYPD OFFICER STEVEN WAN, SHIELD NO. 12945, subsequently provided false information to prosecutors about Plaintiffs' alleged pre-arrest conduct, and made false written statements in arrest processing and criminal prosecution documents including criminal court complaints sworn to under oath against Plaintiffs, based on which Plaintiffs were prosecuted in and required to make appearances in New York City Criminal Court before the Office of the District Attorney of New York County ("DANY") moved to dismiss the cases against them on July 27, 2016.

## JURISDICTION AND VENUE

5.     This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988, and the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

6.     This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3-4).

7.     Pursuant to New York State General Municipal Law ("GML") § 50-e, Plaintiffs filed timely Notices of Claim with the New York City Comptroller on or about July 13, 2016, within 90 days of the date of their arrests.

8.     Plaintiffs filed timely Amended Notices of Claim with the New York City Comptroller regarding their malicious prosecution claims on or about October 25, 2016, within

90 days of July 27, 2016, the date the criminal cases against them were dismissed.

9.      Plaintiffs' claims were not adjusted by the New York City Comptroller's Office within the period of time provided by the GML.

10.     Thus, this Court has supplemental jurisdiction over Plaintiffs' claims under the Constitution and laws of the State of New York because they are so related to the within federal claims that they form part of the same case or controversy pursuant to 28 U.S.C. § 1367(a).

11.     Venue is proper pursuant to 28 U.S.C. §1391(b) in that Plaintiffs' claims arose in the Southern District of New York.

## PARTIES

12.     Plaintiff CHARINA NADURA is an Asian female, and, at all times relevant to this action, she was a resident of New York State.

13.     Plaintiff JUAN CARLOS DÁVILA is a Puerto Rican male, and, at all times relevant to this action, he was a resident of New York State.

14.     Defendant THE CITY OF NEW YORK ("NYC" or "the City") is a municipal entity created and authorized under the laws of the State of New York, with general offices located at City Hall, New York, New York 10007.

15.     Defendant City is authorized by law to maintain the New York City Police Department ("NYPD"), which acts as its agent in the area of law enforcement, and Defendant NYC is ultimately responsible for the NYPD and assumes the risks incidental to the maintenance of it and its employees.

16.     At all times relevant herein, Defendants NYPD OFFICER ANTHONY PEREZ, SHIELD NO. 13493, and NYPD OFFICER STEVEN WAN, SHIELD NO. 12945 were officers,

employees, and agents of the NYPD and who were personally involved in depriving Plaintiffs of their rights, as set forth more fully below.

17.     At all times hereinafter mentioned the Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

18.     Each and all of the acts of the Defendants alleged herein were done by said Defendants while acting within the scope of their employment by the Defendant City.

19.     Each and all of the acts of the Defendants alleged herein were done by said Defendants while acting in furtherance of their employment by the Defendant City.

20.     Defendants were each and all responsible, in whole and/or in part, for the planning for and/or creation, promulgation, implementation, and/or enforcement of the unconstitutional policies, practices and/or customs complained of herein, and/or condoned, acquiesced in, adopted, and/or approved of the same, through their acts and/or failures to act, as set forth more fully below.

21.     At all times relevant herein, as set forth more fully below, Defendants' actions and/or failures to act were malicious, intentional, knowing, and/or with a deliberate indifference to or a reckless regard for the natural and probable consequences of their acts and/or omissions.

22.     Each individual Defendant is sued in her or his individual and official capacities.

## STATEMENT OF FACTS

23.     At around 7:30PM on April 14, 2016, Plaintiffs were acting as journalists working for Democracy Now!, documenting an anti-Donald Trump protest in the vicinity of the Grant Hyatt at 42nd Street in Midtown Manhattan, and police response thereto.

24. Democracy Now! is a national, daily, independent, award-winning news program hosted by journalists Amy Goodman and Juan Gonzalez.

25. At around 7:30PM on April 14, 2016, at around Park Avenue and East 42nd Street, Plaintiffs were both acting as journalists intending to record video and audio of and otherwise to document and report on newsworthy protest activity and police response thereto in a public place for potential broadcast and dissemination.

26. In the minutes leading up to their arrests, Plaintiffs had been recording video and audio of anti-Trump protesters and police responses to them inside the Grand Central Terminal at 42nd Street and on the nearby Park Avenue viaduct.

27. In the minutes leading up to his arrest, Plaintiff Dávila was holding a video camera and recording video and audio.

28. In the minutes leading up to her arrest, Plaintiff Nadura was holding a microphone with a Democracy Now! "microphone flag" that was recording audio.

29. Approximately two minutes before Plaintiffs' arrests, NYPD officers followed apparent protesters along the shoulder of the roadway on the Park Avenue viaduct.

30. There is no sidewalk adjacent to that roadway.

31. During the beginning of that time period, the NYPD officers escorted Plaintiffs along the roadway.

32. Plaintiffs walked with and followed behind and among NYPD officers who appeared to be following behind apparent protesters.

33. No NYPD officers gave Plaintiffs any directions or commands to leave the roadway or to leave the area.

34.     It was then, or should have been, clear to those present, including the Defendants and other NYPD agents, that Plaintiffs were journalists, not protesters.

35.     For example, in addition to the obvious Demcoracy Now! "microphone flag" on the microphone Plaintiff Nadura was holding, Plaintiffs were both wearing laminated Democracy Now! Press Passes on lanyards around their necks.

36.     The Democracy Now! press passes includes the words "PRESS – RADIO/TV" in prominent lettering, features the Democracy Now! logo both in the style of a watermark in the background, provides the URL to the Democracy Now! website (democracynow.org), and states, under the bearer's picture, name, and signature: "The above individual has been accredited by Democracy Now! Please extend all access and courtesies. If found, please return to 207 West 25th St. 11th Floor, NY, NY  10001."

37.     Plaintiff Dávila did not block vehicular or pedestrian traffic prior to his arrest.

38.     Rather, Plaintiff Dávila was walking behind and among NYPD officers prior to his arrest.

39.     Plaintiff Nadura did not block vehicular or pedestrian traffic prior to her arrest.

40.     Rather, Plaintiff Nadura was walking behind and among NYPD officers prior to his arrest.

41.     Around a minute and a half or so before Plaintiffs' arrests, some of the NYPD officers who had been walking ahead of Plaintiffs apparently arrested a perceived protester or protesters ahead on the roadway, in a way that appeared violent to Plaintiffs.

42.     Along with the NYPD officers who had been escorting them, Plaintiffs ran ahead to observe and document the arrest and other police actions.

43.     Plaintiffs stopped running and set up to record at a safe distance away from the NYPD officers who were making an arrest and began to record the arrest.

44.     NYPD officers directed Plaintiffs to "just stay back" – which they did.

45.     Behind Plaintiff Nadura, NYPD officers arrested other perceived protesters.

46.     Plaintiff Nadura extended her microphone toward one person whom NYPD officers were arresting.

47.     An NYPD officer or officers directed Plaintiff Nadura to move back.

48.     An NYPD officer then directed Plaintiffs "off the roadway."

49.     Plaintiffs both moved back, passing numerous NYPD officers.

50.     Plaintiff Nadura moved back (toward Plaintiff Dávila) within seconds of the first direction.

51.     Plaintiff Dávila also moved back.

52.     As Plaintiffs moved back, one NYPD officer said "keep walking."

53.     An NYPD officer who appeared to be associated with the NYPD's Legal Bureau followed quickly behind Plaintiffs as they moved back, pushing through other NYPD officers who were encouraging Plaintiffs to continue moving back and to leave the roadway, exclaiming "They have to be able to film!" at least six times.

54.     In response to that NYPD officer's directions, the other NYPD officers present, who had been encouraging Plaintiffs to move back, stopped doing so, and allowed Plaintiffs to walk back toward the location in which NYPD officers were making arrests.

55.     After Plaintiffs walked back to the arrest location, an NYPD officer then stated: "Alright guys, this is an unsafe place. I'm going to ask you guys to leave the roadway."

56.    NYPD Deputy Inspector Anthony Lombardo approached them, asked if they were "press", and said to Plaintiff Nadura: "She doesn't have a press pass."

57.    Plaintiff Nadura asked: "Don't we have the right to film?"

58.    An NYPD officer then said: "You're in the roadway, ma'am. We're asking you to get out of the roadway."

59.    At that same time, Plaintiffs backed up again in attempts to leave the roadway.

60.    An NYPD supervisor directed an NYPD SRG Sergeant words to the effect of: "Give him the warning, or we're going to take him, too" – apparently referring to Plaintiff Dávila.

61.    As Plaintiffs backed up, that NYPD SRG Sergeant walked toward them reading NYPD warning to "remain on the sidewalk and only cross the street in accordance with the traffic signals" and that if people obstructed vehicular traffic, they "would be placed under arrest."

62.    Plaintiffs were backing up on the shoulder of the roadway and in no way impeding vehicular traffic.

63.    There was no sidewalk at that location to be on or to remain on.

64.    As Plaintiffs backed up and as the NYPD SRG Sergeant read those warnings, Plaintiff Nadura said, "Press!" and "First Amendment rights!"

65.    Just after reading that warning, NYPD officers placed Plaintiffs under arrest.

66.    At the time, place, and location of their arrests, prior to their arrests, Plaintiffs had not been engaged in unlawful conduct.

67.     Rather, Plaintiffs had been engaged in constitutionally protected conduct, to wit, walking along with police officers responding to a protest and acting as journalists observing and documenting the demonstration and police response thereto.

68.     Upon information and belief, Defendant Wan physically placed Plaintiff Nadura under arrest.

69.     An NYPD officer placed plastic flex-cuffs on Plaintiff Nadura.

70.     Plaintiff Nadura's right hand turned purple because the cuffs were so tight.

71.     Plaintiff cried because the cuffs were tight and painful.

72.     Plaintiff pleaded with officers to remove the flexcuffs.

73.     Eventually, NYPD officers replaced the flexcuffs.

74.     Upon information and belief, Defendant Perez and other NYPD officers physically placed Plaintiff Dávila under arrest.

75.     Plaintiff Dávila was compliant with his arrest.

76.     In physically placing Plaintiff Dávila under arrest, several NYPD officers forced Plaintiff Dávila to the ground.

77.     NYPD officers forced Plaintiff Dávila's left knee to strike the ground.

78.     As Plaintiff Dávila was the ground, several NYPD officers forced Plaintiff Dávila's face into the pavement, causing grit from the pavement to irritate his left eye.

79.     As Plaintiff Dávila was on the ground, NYPD officers applied pressure to Plaintiff Dávila's neck.

80.     As Plaintiff Dávila was on the ground, an officer or officers forcefully twisted Mr. Dávila's right arm in what appeared to him to be a pain compliance hold.

81.     Plaintiff Dávila complained about the force the police were using.

82.     Plaintiff Dávila heard officers saying: "Stop resisting!"

83.     Plaintiff Dávila was not resisting.

84.     Plaintiff Dávila did not refuse to walk from the arrest location to the NYPD Prisoner Transport Vehicle.

85.     Four NYPD officers then carried Plaintiff Dávila from his arrest location toward a NYPD Prisoner Transport Vehicle, with each grabbing one of his arms or legs.

86.     That caused Plaintiff Dávila severe pain in his right arm, which NYPD officers had twisted.

87.     Plaintiff Dávila complained to the NYPD officers about that pain and the NYPD officers allowed him to walk the rest of the way to the NYPD Prisoner Transport Vehicle.

88.     By the time Plaintiff Dávila arrived at the NYPD Prisoner Transport Vehicle, his wrists were turning colors because the flex-cuffs binding them had been applied so tightly.

89.     Plaintiff Dávila's wrists were bleeding because the flex-cuffs binding them had been applied so tightly – particularly his right wrist.

90.     Plaintiff Dávila complained about how tight his flex-cuffs were and an NYPD officer eventually removed and replaced them.

91.     Plaintiffs were both placed in an NYPD prisoner transport vehicle.

92.     Plaintiffs were transported to One Police Plaza for arrest processing at the NYPD's Mass Arrest Processing Center ("MAPC").

93.     Defendant Wan was assigned to process, and did process, Plaintiff Nadura's arrest.

94.     Defendant Perez was assigned to process, and did process, Plaintiff Dávila's arrest.

95.     As part of their mass arrest processing duties, Defendant Wan and Perez filled out NYPD paperwork regarding Plaintiffs' arrests.

96.     Upon information and belief, Defendants Wan and Perez included false information in their official NYPD arrest processing paperwork regarding their observations of Plaintiffs prior to their arrests.

97.     For example, upon information and belief, Defendants Wan and Perez recorded that they had observed Plaintiffs walking with "approximately ten individuals … walking in between cars, blocking the normal flow of traffic, and impeding vehicles from moving forward" prior to their arrests.

98.     Prior to Plaintiffs' arrests, Plaintiffs were not blocking the normal flow of traffic, or impeding vehicles from moving forward.

99.     Prior to Plaintiffs' arrests, Plaintiffs walked along with and along the same path as police.

100.    Whatever the "approximately ten individuals" the officers were referring to – presumably anti-Trump protesters - were doing prior to Plaintiffs' arrests, prior to Plaintiffs' arrests, at the location of their arrests, at which the NYPD alleged they had blocked traffic, Plaintiffs were not walking with any individuals other than the NYPD officers who were escorting them along the roadway.

101.    Additionally, upon information and belief, Defendants Wan and Perez recorded that they had observed Plaintiffs "and other individuals were blocking the flow of traffic and walking in the middle of the street" thereby blocking "approximately ten to fifteen vehicles."

102.    However, Plaintiffs were not blocking the flow of or obstructing vehicular traffic.

103.    Additionally, upon information and belief, Defendants Wan and Perez recorded that they had observed that each Plaintiff "was given multiple orders to disperse and leave the roadway, but" that each Plaintiff then "continued walking among the vehicles."

104.    The purported police orders Plaintiffs were given are accounted for above.

105.    Neither Plaintiff "continued walking among the vehicles" after any dispersal order.

106.    Upon information and belief, Defendants Wan and Perez recorded those false observations about Plaintiffs in NYPD paperwork and forwarded the same to the Office of the District Attorney of New York County ("DANY").

107.    After approximately four hours each in police custody, each Plaintiff was eventually released with a Desk Appearance Ticket ("DAT") directing them to appear in New York City Criminal Court on June 6, 2016.

108.    On April 17, 2016, Plaintiff Dávila visited a Doctor related to his injuries.

109.    The doctor noted that Mr. Dávila was complaining of pain in both wrists due to the handcuffing, pain in his right shoulder, pain in his neck, and pain in his left knee.

110.    The doctor's evaluation noted "moderate tenderness to proximal dorsal ulnar aspect" of Plaintiff Dávila's left forearm as wel as a "L forearm contusion", "moderate tenderness to anterior left knee", and "mild pain w/abduction and rotation of Rt shoulder," as well as a "healing superficial abrasion" on each wrist.

111.    Based on the false and misleading information Defendants Wan and Perez provided to DANY, DANY determined to prosecute Plaintiffs for violating New York Penal Law ("PL") Sections 240.20(5) (Disorderly Conduct – Blocking vehicular and/or pedestrian

traffic) and 240.20(6) (Disorderly Conduct – Refusal to comply with a lawful police order to disperse).

112.    Plaintiffs retained an attorney to defend them against the charges.

113.    On June 6, 2016, Plaintiffs appeared with counsel pursuant to the DAT's.

114.    As a result, in sworn accusatory instruments presented to the New York City Criminal Court, Defendants Wan and Perez swore that they had observed Plaintiffs act in concert with a group of around 10 others to block around 10-15 vehicles, and refuse to comply with multiple dispersal orders, instead continuing to walk among the vehicles.

115.    Based on those sworn allegations, Plaintiffs were prosecuted for PL 240.20(5) and 240.20(6) violations.

116.    At each Defendant's arraignment, the New York City Criminal Court released each Plaintiff on each Plaintiff's own recognizance pursuant to New York State Criminal Procedure Law ("CPL") Section 510.40, requiring them to return on July 27, 2016.

117.    During the pendency of the criminal court cases against them, Plaintiffs were required to remain at all times subject to and amenable to the processes, orders, and mandates of the New York City Criminal Court.

118.    In a July 5, 2016 letter, Democracy Now! informed DANY that both Plaintiffs were "full-time employees of Democracy Now! Productions who were on assignment when they were arrested on April 14, 2016 while covering protests outside a Donald Trump appearance at the Grand Hyatt hotel" whom Democracy Now! had "assigned Nadura and Dávila to cover the protests for our award-winning daily TV and radio newscast, which is broadcast on over 1,300 public stations across the world."

119.     Because Plaintiffs had been "engaging in reportorial duties that are required as part of their employment at a legitimate and well-established news organization when they were arrested," Democracy Now! asked that DANY "dismiss the charges."

120.     At the July 27, 2016 appearance in Plaintiffs' cases, DANY moved to dismiss the prosecutions.

121.     On July 27, 2016 the criminal cases against Plaintiffs were dismissed and sealed.

122.     As a result of the foregoing, Plaintiffs were deprived of their liberty and property and First Amendment and other constitutional rights, suffered bodily injury, pain and suffering, emotional injury, humiliation, costs and expenses, and were otherwise damaged and injured, and Defendants chilled and created the risk of chilling conduct protected by the First Amendment.

## FIRST CLAIM

## VIOLATIONS OF PLAINTIFFS' RIGHTS TO BE FREE FROM FALSE ARREST

## FOURTH AND FOURTEENTH AMENDMENTS THROUGH 42 U.S.C. § 1983

## ON BEHALF OF PLAINTIFF DÁVILA AGAINST DEFENDANT PEREZ AND ON BEHALF OF PLAINTIFF NADURA AGAINST DEFENDANT WAN

123.     Plaintiffs incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

124.     As a result of Defendants' conduct as described above, Plaintiffs were subjected to illegal, improper, and false arrest by Defendants and taken into custody and caused to be falsely imprisoned, detained, and confined, without any probable cause, privilege, or consent.

125.     As a result of the foregoing, Plaintiffs were deprived of their liberty and property and First Amendment and other constitutional rights, suffered bodily injury, pain and suffering, emotional injury, humiliation, costs and expenses, and were otherwise damaged and injured, and Defendants chilled and created the risk of chilling conduct protected by the First Amendment.

## SECOND CLAIM

## VIOLATIONS OF PLAINTIFFS' FIRST AMENDMENT RIGHTS

## FIRST AND FOURTEENTH AMENDMENTS THROUGH 42 U.S.C. § 1983

## ON BEHALF OF PLAINTIFF DÁVILA AGAINST DEFENDANT PEREZ AND ON BEHALF OF PLAINTIFF NADURA AGAINST DEFENDANT WAN

126.   Plaintiffs incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

127.   Plaintiffs had clearly established rights to observe, document, and report on the April 14, 2016 anti-Trump protest, the NYPD's response to it, and resulting arrests.

128.   The on-the-spot determinations Defendants made to force Plaintiffs to leave the area where police were making arrests and thereby prevent Plaintiffs from documenting and reporting on what was occurring were restrictions on their protected conduct that violated Plaintiffs' First Amendment rights.

129.   The restrictions imposed by Defendants on Plaintiffs' First Amendment rights complained of herein were:

    a.   Not content-neutral and lacked narrowly tailored to promote a compelling government interest;

    b.   Content-neutral, but lacked narrow tailoring to serve a significant governmental interest and/or failed to provide ample alternatives for expression;

    c.   Afforded defendants unbridled discretion to limit or deny plaintiffs' abilities to engage in protected conduct (also raising constitutionally significant vagueness and overbreadth concerns); and/or

    d.   Amounted to the imposition of strict liability on Plaintiffs for engaging in protected conduct.

130.   Additionally or alternately, Defendants engaged in the acts and omissions complained of herein in retaliation for Plaintiffs' protected conduct and/or speech.

131.    Defendants engaged in the acts and omissions complained of herein in order to prevent Plaintiffs from continuing to engage in protected conduct.

132.    Defendants engaged in the acts and omissions complained of herein in order to prevent and/or discourage Plaintiffs from engaging in similar protected conduct in the future.

133.    Each Plaintiff was actually chilled in that each Plaintiff was prevented and /or deterred from participating in protected conduct on the date of and after the incident as a result of Defendants' violations of their rights as complained of herein.

134.    For example, Plaintiffs were irreparably harmed when Defendants prevented them from continuing to observe, document, and report on the April 14, 2016, anti-Trump protest, and police response thereto, preventing them from remaining within sight and sound of NYPD arrest activity altogether – and thereby burdening substantially more protected conduct than was necessary - rather than imposing more narrowly tailored regulations on Plaintiffs' abilities to observe, documents, and report on the April 14, 2016, anti-Trump protest, and police response thereto, such as by directing them to remain at a specific, reasonably close and safe distance, within sight and sound.

135.    As a result of the foregoing, Plaintiffs were deprived of their liberty and property and First Amendment and other constitutional rights, suffered bodily injury, pain and suffering, emotional injury, humiliation, costs and expenses, and were otherwise damaged and injured, and Defendants chilled and created the risk of chilling conduct protected by the First Amendment.

## THIRD CLAIM

## VIOLATIONS OF PLAINTIFFS' RIGHTS TO REMAIN FREE FROM EXCESSIVE USES OF FORCE BY THE POLICE

### FOURTH AND FOURTEENTH AMENDMENTS THROUGH 42 U.S.C. § 1983

**ON BEHALF OF PLAINTIFF DÁVILA AGAINST DEFENDANT PEREZ AND ON BEHALF OF PLAINTIFF NADURA AGAINST DEFENDANT WAN**

136.    Plaintiffs incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

137.    Defendant Perez injured Plaintiff Dávila.

138.    Defendant Wan injured Plaintiff Nadura.

139.    The level of physical force employed by those Defendants against those Plaintiffs was objectively unreasonable in light of the facts and circumstances surrounding their arrests.

140.    Plaintiffs were not involved in crimes, let alone severe crimes.

141.    Plaintiffs did not present an immediate threat to the safety of the officers or others.

142.    Plaintiffs did not actively resist or seek to flee.

143.    As a result of the foregoing, Plaintiffs were deprived of their liberty and property and First Amendment and other constitutional rights, suffered bodily injury, pain and suffering, emotional injury, humiliation, costs and expenses, and were otherwise damaged and injured, and Defendants chilled and created the risk of chilling conduct protected by the First Amendment.

**FOURTH CLAIM**

**VIOLATIONS OF PLAINTIFFS' FAIR TRIAL RIGHTS**

**FIFTH, SIXTH, AND/OR FOURTEENTH AMENDMENTS THROUGH 42 U.S.C. § 1983**

**ON BEHALF OF PLAINTIFF DÁVILA AGAINST DEFENDANT PEREZ AND ON BEHALF OF PLAINTIFF NADURA AGAINST DEFENDANT WAN**

144.    Plaintiffs incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

145.    Defendants fabricated evidence of a material nature, likely to influence a jury's decision, intentionally forwarded that evidence to prosecutors, as a result of which each Plaintiff suffered deprivations of liberty.

146.    As a result of Defendants' forwarding false information to DANY, each Plaintiff suffered deprivations of liberty.

147.    For example, each Plaintiff was held before release with a DAT for around four hours.

148.    For example, each Plaintiff was required to appear at each Plaintiff's arraignment.

149.    For example, after each Plaintiff's arraignment, each Plaintiff was required to return to court.

150.    After each Plaintiff's arraignment, the ongoing criminal cases imposed other restrictions were imposed on Plaintiff's abilities to travel.

151.    For example, at each Plaintiff's arraignment, each Plaintiff was released on their own recognizance, and as such each Plaintiff was required to remain at all times subject to and amenable to the processes, orders, and mandates of the New York City Criminal Court.

152.    As a result of the foregoing, Plaintiffs were deprived of their liberty and property and First Amendment and other constitutional rights, suffered bodily injury, pain and suffering, emotional injury, humiliation, costs and expenses, and were otherwise damaged and injured, and Defendants chilled and created the risk of chilling conduct protected by the First Amendment.

## FIFTH CLAIM

## VIOLATIONS OF PLAINTIFFS' RIGHTS TO BE FREE FROM MALICIOUS PROSECUTION

### FOURTH AND FOURTEENTH AMENDMENTS THROUGH 42 U.S.C. § 1983

**ON BEHALF OF PLAINTIFF DÁVILA AGAINST DEFENDANT PEREZ AND ON
BEHALF OF PLAINTIFF NADURA AGAINST DEFENDANT WAN**

153.    Plaintiffs incorporate by reference the allegations set forth in all preceding and
following paragraphs as if fully set forth herein.

154.    Defendants misrepresented and falsified evidence regarding Plaintiffs' conduct
and their observations of it, which they forwarded to DANY.

155.    Defendants did not make a complete and full statement of facts to DANY.

156.    Defendants withheld exculpatory evidence from DANY.

157.    Defendants were directly and actively involved in the initiation or prosecution of
criminal proceedings against Plaintiffs, including by supplying and creating false information
that was included in NYPD paperwork sent to DANY, providing falsely sworn information in
accusatory instruments created by DANY based on information provided by Defendants, and
otherwise providing false information to DANY.

158.    Defendants lacked probable cause to initiate and continue criminal proceedings
against Plaintiffs.

159.    Defendants acted with malice in initiating criminal proceedings against Plaintiffs.

160.    Defendants were directly and actively involved in the continuation of criminal
proceedings against Plaintiffs.

161.    Defendants lacked probable cause to continue criminal proceedings against
Plaintiffs.

162.    Defendants acted with malice in continuing criminal proceedings against
Plaintiffs.

163.    As a result of the prosecutions, each Plaintiff suffered deprivations of liberty.

164.    For example, each Plaintiff was held before release with a DAT for around four hours.

165.    For example, each Plaintiff was required to appear at each Plaintiff's arraignment.

166.    For example, after each Plaintiff's arraignment, each Plaintiff was required to return to court.

167.    After each Plaintiff's arraignment, the ongoing criminal cases imposed other restrictions were imposed on Plaintiff's abilities to travel.

168.    For example, at each Plaintiff's arraignment, each Plaintiff was released on their own recognizance, and as such each Plaintiff was required to remain at all times subject to and amenable to the processes, orders, and mandates of the New York City Criminal Court.

169.    Notwithstanding Defendants' misconduct, the criminal proceedings against Plaintiffs were favorably terminated on the merits.

170.    As a result of the foregoing, Plaintiffs were deprived of their liberty and property and First Amendment and other constitutional rights, suffered bodily injury, pain and suffering, emotional injury, humiliation, costs and expenses, and were otherwise damaged and injured, and Defendants chilled and created the risk of chilling conduct protected by the First Amendment.

## SIXTH CLAIM

## ASSAULT AND BATTERY

### UNDER THE LAWS OF THE STATE OF NEW YORK

**ON BEHALF OF PLAINTIFF DÁVILA AGAINST DEFENDANT PEREZ, ON BEHALF OF PLAINTIFF NADURA AGAINST DEFENDANT WAN, AND ON BEHALF OF BOTH PLAINTIFFS AGAINST DEFENDANT CITY OF NEW YORK BASED ON THE DOCTRINE OF *RESPONDEAT SUPERIOR* LIABILITY**

171.    Plaintiffs incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

172.    Defendants committed assault within the meaning of New York common law against Plaintiffs by intentionally placing Plaintiffs in fear of imminent harmful or offensive contact.

173.    Defendants committed battery within the meaning of New York common law against Plaintiffs by intentionally physically contacting Plaintiffs without Plaintiffs' consent.

174.    Defendants did thereby inflict assault and battery upon the Plaintiffs.

175.    Defendants' acts and omissions were the direct and proximate cause of injury and damage to the Plaintiffs and violated their rights as guaranteed by the laws and Constitution of the State of New York.

176.    The conduct of the police officials alleged herein occurred while they were on duty and/or in and during the course and scope of their duties and functions as police officials, and/or while they were acting as agents and employees of Defendant City, clothed with and/or invoking state power and/or authority, and, as a result, Defendant City is liable to the Plaintiffs pursuant to the state common law doctrine of *respondeat superior*.

177.    As a result of the foregoing, Plaintiffs were deprived of their liberty and property and First Amendment and other constitutional rights, suffered bodily injury, pain and suffering, emotional injury, humiliation, costs and expenses, and were otherwise damaged and injured, and Defendants chilled and created the risk of chilling conduct protected by the First Amendment.

**SEVENTH CLAIM**

**FALSE ARREST/FALSE IMPRISONMENT**

**UNDER THE LAWS OF THE STATE OF NEW YORK**

**ON BEHALF OF PLAINTIFF DÁVILA AGAINST DEFENDANT PEREZ, ON BEHALF OF PLAINTIFF NADURA AGAINST DEFENDANT WAN, AND ON BEHALF OF BOTH PLAINTIFFS AGAINST DEFENDANT CITY OF NEW YORK BASED ON THE DOCTRINE OF *RESPONDEAT SUPERIOR* LIABILITY**

21

178.    Plaintiffs incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

179.    By the actions described above, all of the police officials described above did falsely arrest and/or imprison Plaintiffs within the meaning of New York common law without reasonable or probable cause, illegally and without a written warrant, and without any right or authority to do so. Plaintiffs were conscious of the confinement and it was without their consent.

180.    Defendants' acts and omissions were the direct and proximate cause of injury and damage to the Plaintiffs and violated their rights as guaranteed by the laws and Constitution of the State of New York.

181.    The conduct of the police officials alleged herein occurred while they were on duty and/or in and during the course and scope of their duties and functions as police officials, and/or while they were acting as agents and employees of Defendant City, clothed with and/or invoking state power and/or authority, and, as a result, Defendant City is liable to the Plaintiffs pursuant to the state common law doctrine of *respondeat superior*.

182.    As a result of the foregoing, Plaintiffs were deprived of their liberty and property and First Amendment and other constitutional rights, suffered bodily injury, pain and suffering, emotional injury, humiliation, costs and expenses, and were otherwise damaged and injured, and Defendants chilled and created the risk of chilling conduct protected by the First Amendment.

## EIGHTH CLAIM

## MALICIOUS PROSECUTION

## UNDER THE LAWS OF THE STATE OF NEW YORK

## ON BEHALF OF PLAINTIFF DÁVILA AGAINST DEFENDANT PEREZ, ON BEHALF OF PLAINTIFF NADURA AGAINST DEFENDANT WAN, AND ON BEHALF OF

**BOTH PLAINTIFFS AGAINST DEFENDANT CITY OF NEW YORK BASED ON THE DOCTRINE OF *RESPONDEAT SUPERIOR* LIABILITY**

183.    Plaintiffs incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

184.    By the actions described above, by the false allegations against Plaintiffs in the accusatory instrument, the individual Defendants caused a criminal proceeding to be initiated against Plaintiffs, even though there was no probable cause for an arrest or prosecution in this matter.

185.    The individual Defendants maliciously caused this prosecution to be initiated in that they knew there was no probable cause for such prosecution and that they further wished to harm and punish Plaintiffs for illegitimate reasons.

186.    The criminal case against Plaintiffs were terminated in their favor in that all charges were dismissed in their entirety.

187.    The conduct of the police officials alleged herein occurred while they were on duty and/or in and during the course and scope of their duties and functions as police officials, and/or while they were acting as agents and employees of Defendant City, clothed with and/or invoking state power and/or authority, and, as a result, Defendant City is liable to the Plaintiffs pursuant to the state common law doctrine of *respondeat superior*.

188.    As a result of the foregoing, Plaintiffs were deprived of their liberty and property and First Amendment and other constitutional rights, suffered bodily injury, pain and suffering, emotional injury, humiliation, costs and expenses, and were otherwise damaged and injured, and Defendants chilled and created the risk of chilling conduct protected by the First Amendment.

## NINTH CLAIM

## CONSTITUTIONAL TORTS

**UNDER THE CONSTITUTION OF THE STATE OF NEW YORK**

**ON BEHALF OF PLAINTIFF DÁVILA AGAINST DEFENDANT PEREZ, ON BEHALF OF PLAINTIFF NADURA AGAINST DEFENDANT WAN, AND ON BEHALF OF BOTH PLAINTIFFS AGAINST DEFENDANT CITY OF NEW YORK BASED ON THE DOCTRINE OF *RESPONDEAT SUPERIOR* LIABILITY**

189.    Plaintiffs incorporate by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

190.    Defendants, acting under color of law, violated Plaintiffs' rights pursuant to Article I, §§ 8, 9, 11, and 12 of the New York State Constitution.

191.    A damages remedy here is necessary to effectuate the purposes of Article I, §§ 6, 8, 9, 11, and 12 of the New York State Constitution, and appropriate to ensure full realizations of Plaintiffs' rights under those sections.

192.    The conduct of the police officials alleged herein occurred while they were on duty and/or in and during the course and scope of their duties and functions as police officials, and/or while they were acting as agents and employees of Defendant City, clothed with and/or invoking state power and/or authority, and, as a result, Defendant City is liable to the Plaintiffs pursuant to the state common law doctrine of *respondeat superior*.

193.    As a result of the foregoing, Plaintiffs were deprived of their liberty and property and First Amendment and other constitutional rights, suffered bodily injury, pain and suffering, emotional injury, humiliation, costs and expenses, and were otherwise damaged and injured, and Defendants chilled and created the risk of chilling conduct protected by the First Amendment.

## JURY DEMAND

194.    Plaintiffs demand a trial by jury in this action of all issues pursuant to Fed. R. Civ. P. 38(b).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray for the following relief:

A.     Compensatory damages against the Defendants jointly and severally; and

B.     Punitive damages against the individual Defendants; and

C.     Attorney's fees and costs pursuant to 42 USC §1988; and

D.     Such other and further relief as the Court deems just and proper.

DATED:      Brooklyn, New York
              July 12, 2017

Respectfully submitted,

_____
Gideon Orion Oliver
*Attorney for Plaintiffs*
277 Broadway, Suite 1501
New York, NY  10007
646-263-3495